UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-20082-ALTMAN/Sanchez

JESSICA IACOLI,

   *Plaintiff*,

v.

MSC CRUISES, S.A.,

   *Defendant*.
_____/

## ORDER ON MOTION TO DISMISS

In this maritime slip-and-fall case, MSC Cruises, S.A., has moved to dismiss Jessica Iacoli's First Amended Complaint for Damages and Demand for Trial by Jury (the "FAC") [ECF No. 11]. *See* Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "MTD") [ECF No. 16]. For the reasons we discuss below, the MTD[1] is **DENIED**.

### The Facts[2]

Iacoli sued MSC for negligence on January 9, 2024. *See generally* Complaint [ECF No. 1]. After MSC moved to dismiss the Complaint, *see* Motion to Dismiss [ECF No. 8], Iacoli filed her now-operative FAC, in which she asserts the following five claims: "Negligent Failure to Inspect" (Count I); "Negligent Failure to Maintain" (Count II); "Negligent Failure to Remedy" (Count III); "Negligent Failure to Warn of Dangerous Condition" (Count IV); and "Negligent Design, Installation, and/or Approval of the Subject Area and the Vicinity" (Count V). *See generally* FAC. According to Iacoli, "[o]n or about December 11, 2023, at approximately 3:00 p.m. IACOLI was walking on deck 13 [of the

---

[1] The MTD is ripe for resolution. *See* Plaintiff's Response to Defendant's Motion to Dismiss (the "MTD Response") [ECF No. 19]; Defendant's Reply in Support of its Motion to Dismiss (the "MTD Reply") [ECF No. 22].

[2] We take the following facts from Iacoli's First Amended Complaint [ECF No. 11] and accept them as true for purposes of this Order.

MSC cruise ship *Seascape*] and was going to Deck 16 from the Marketplace Buffet when she slipped and fell on the marble floor surface, which was unreasonably wet and slippery . . . . As a result, [she] sustained severe injuries and aggravations[.]" *Id.* ¶¶ 14–15. "[A]n MSC crewmember [was present] in the subject area within 10–15 feet of the exact location [and he/she] witnessed the subject incident[.]" *Id.* ¶ 16. Also present were (1) a caution cone depicting a stick figure slipping and (2) a wall-mounted placard with the same icon that read "Floor Slippery When Wet." *Ibid.* (including photographs of the caution cone and placard). Iacoli, however, was "distracted by [a] Christmas tree" and did not see the caution cone (or, presumably, the placard). *Id.* ¶ 24. According to Iacoli, the caution cone was one of many "all throughout the ship . . . such that she did not realize that this area was substantially more dangerous[.]"[3] *Ibid.* As a result of her fall, Iacoli sustained injuries, including a concussion and "an aggravation of a previous shoulder tear[.]" *Id.* ¶ 15. She seeks compensatory damages, court costs, and "any and all other relief which this Court deems just or appropriate." *Id.* at 11–12

MSC now moves to dismiss all five counts under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. *See* MTD at 1.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at

---

[3] This is a preposterous suggestion—the argument being that MSC should be liable because it did *too good* a job of marking (and warning about) spills and dangerous conditions. But we won't get into it much in this Order.

2

555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). "The motion is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Ibid.* (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

"Claims arising from torts committed aboard ships on navigable waters are governed by general maritime law." *Breaux v. NCL (Bahamas) Ltd.*, 2022 WL 2304254, at *6 (S.D. Fla. June 24, 2022) (Altman, J.); *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) ("[W]e note that the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law[.]").

To plead a viable negligence claim in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This reasonable-care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867

F.2d at 1322. "Actual notice exists when the defendant knows of the risk-creating condition," *Gorczyca v. MSC Cruises, S.A.*, 715 F. App'x 919, 921 (11th Cir. 2017), while constructive notice exists when the defendant "*should have known* of the dangerous condition," *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1204 (S.D. Fla. 2020) (Moore, C.J.).

## ANALYSIS

MSC contends that Iacoli has failed to state a claim because the FAC "is premised solely on 'fact-free, wholly conclusory, boilerplate allegations,'" MTD at 2 (quoting *Rosenberg v. NCL (Bahamas) Ltd.*, 2023 WL 1466858, at *2 (S.D. Fla. Feb. 2, 2023) (Scola, J.)), such that Iacoli "cannot even identify with specificity the alleged risk creating condition," *id.* at 9. We disagree and find that Iacoli has pled enough (specific) facts to proceed to discovery on her claim that the "risk creating condition" was "the marble floor surface . . . [that] was unreasonably wet and slippery[.]" FAC ¶ 14. We also find that Iacoli has sufficiently alleged that MSC had constructive notice of the dangerous condition because of (1) the presence of warning signs, (2) the presence of an MSC employee, and (3) MSC's participation in the design of the *Seascape*.

### I.    Notice (as relevant to Counts I–IV)

MSC challenges Iacoli's first four counts on the ground that she "fails to plausibly plead MSC's actual or constructive notice." [4] MTD at 4. Again, to assert a valid maritime tort claim, the plaintiff must plausibly allege that the tortfeasor had "actual or constructive knowledge of the risk-creating condition[.]" *Keefe*, 867 F.2d at 1322. "Actual notice exists when the defendant knows about the dangerous condition, and constructive notice exists where 'the shipowner ought to have known of the peril to its passengers.'" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022) (quoting *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the

---

[4] We'll get to MSC's arguments on Count V—including the similar contention that Iacoli failed to allege proper notice as to that count—below. *See infra* at 13–15.

'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Ibid.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)). Iacoli has plausibly alleged that MSC had constructive notice of the dangerous condition by virtue of (1) the presence of the caution cone and the warning placard *and* (2) the presence of an MSC employee.

*First*, the caution signs. According to Iacoli, "[t]here was a wet floor caution cone on the subject surface and a 'floor slippery when wet' plaque in the subject area . . . in the exact location [Iacoli] fell." FAC ¶ 16(b). Iacoli also attached pictures—taken six and eight days after the incident—that "fairly and accurately depict both signs as they appeared on the date . . . of the incident[.]" *Ibid.* MSC counters that Iacoli "made no effort to allege factual content capable of plausibly demonstrating that the alleged 'caution cone' and 'plaque' were intended to warn of the specific risk creating condition at issue." MTD at 1. This is absurd. While MSC is right that "there must be a connection between the warning and the danger," *Guevara*, 930 F.3d at 721, Iacoli has made that connection by alleging that the *wet-floor* caution cone was meant to warn passengers about a *wet floor*.

Unsurprisingly, courts in our Circuit have routinely recognized that—in slip-and-fall cases—the presence of wet-floor signs in the vicinity of wet floors is sufficient, at the pleading stage, to establish a connection between the warning sign and the danger. *See, e.g.*, *Brady v. Carnival Corp.*, 33 F.4th 1278, 1283 (11th Cir. 2022) ("[A] reasonable inference from the placement of the caution sign is that Carnival knew that the Lido Deck would become slippery when wet."); *Williams v. MSC Cruises, S.A.*, 2024 WL 81346, at *4–5 (S.D. Fla. Jan. 8, 2024) (Scola, J.) ("Williams has pled that connection by highlighting in her allegations that the signs were specifically intended to warn of a slippery floor. Indeed, both the cone and the signs attached to the floor depict a person slipping on a surface, and

5

the floor signs literally state 'FLOOR SLIPPERY WHEN WET.' Thus, the allegations in Williams's amended complaint plausibly plead a connection between the warning signs MSC placed in the subject area and the area's unusual slipperiness." (cleaned up)); *Guerra v. MSC Cruises, S.A.*, 2024 WL 1603647, at *3 (S.D. Fla. Apr. 12, 2024) (Scola, J.) (finding that the plaintiff "ha[d] plausibly alleged notice based on the 'slippery when wet' warning sign"); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1289 (11th Cir. 2015) (holding that the presence of caution signs on the pool deck after it had rained was sufficient to establish notice at summary judgment). And that's exactly what Iacoli has alleged: "MSC's crewmembers are or should have been [aware] due to their knowledge that the subject area was very slippery as evidenced by the warning signs they placed[.]" FAC ¶ 24.

MSC also argues that, because Iacoli's photos were taken several days after the incident, "it is impossible to determine the 'connection between the warning and the danger.'" MTD Reply at 6. But the pictures are just icing on a sufficiently crafted cake. Again, Iacoli specifically alleges that the floor was "unreasonably wet and slippery" and that "[t]here was a wet floor caution cone on the subject surface and a 'floor slippery when wet' plaque." FAC ¶¶ 14, 16(b). So, even if we ignored the photos, Iacoli's complaint sufficiently establishes a connection between the wet floor and the wet-floor warning. We won't penalize Iacoli for giving us *more*—allegations *plus* photos—than was necessary.

*Second*, the crewmember. According to Iacoli, "[t]here was an MSC crewmember in the subject area within 10-15 feet of the exact location of IACOLI's fall who witnessed the subject incident, and who was within plain viewing distance, close enough to have seen the subject water on the floor since this crewmember was looking right in the direction of the subject surface[.]" FAC ¶ 16(a). This employee (Iacoli adds) "failed to clean up the subject water prior to IACOLI's fall." *Ibid*. That's plainly sufficient to establish constructive notice.

In yet another bout of frivolity, however, MSC says that "Plaintiff's Amended Complaint does not plausibly allege that the alleged crewmember was aware of the alleged 'risk creating condition';

that the crew member should have been aware of the alleged 'risk creating condition'; or how the alleged crew member could have been aware of the alleged 'risk creating condition.'" MTD at 10. In support, MSC cites the Eleventh Circuit's decision in *Holland v. Carnival Corporation*, where the plaintiff—who had slipped and fallen on a glass staircase—alleged that the defendant was on constructive notice because "the '[c]rewmembers in the surrounding shops ha[d] a clear unobstructed view of the staircase,' and [ ] there were 'frequently spills on the staircase.'" 50 F.4th 1088, 1091 (11th Cir. 2022). In *Holland*, however, the plaintiff merely "allege[d] that there were crewmembers in the surrounding shops" *without* also "alleg[ing] that there were any crewmembers in the immediate area of the glass staircase that could have observed or warned him of the hazard." *Id.* at 1096. The district court thus found the plaintiff's allegation "possible" but not "plausible," *id.* at 1092, and the Eleventh Circuit affirmed, *id.* at 1097.

That's just not our case. As we've said, Iacoli alleges that an MSC employee was between "10-15 feet of the exact location of IACOLI's fall *who witnessed the subject incident*, and *who was within plain viewing distance, close enough to have seen the subject water on the floor* since this crewmember was *looking right in the direction of the subject surface*[.]" FAC ¶ 16(a) (emphases added). Iacoli has thus done precisely what the *Holland* Plaintiff failed to do: allege that the employee "could have observed or warned h[er] of the hazard." *Holland*, 50 F.4th at 1096.

Unsurprisingly, courts in our Circuit have regularly found similar allegations sufficient to plead a claim based on constructive notice. *See, e.g.*, *Hostert v. Carnival Corp.*, 2024 WL 68292, at *5 (S.D. Fla. Jan. 5, 2024) (Altman, J.) (collecting cases for the proposition that a slip-and-fall plaintiff may establish constructive notice by "show[ing] that the defendant's employees were 'in the vicinity of where the fall occurred,' such that they *should've* known of the dangerous condition" (quoting *Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019)); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) (overruling the district court's decision to grant summary judgment for the

7

cruise line because the plaintiff's allegations "place[ed] the crewmember in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter" and because, "[d]rawing all reasonable inferences in [the plaintiff's] favor, a factfinder could conclude that the crewmember knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [the plaintiff] of it"); *Davis v. Carnival Corp.*, 2023 WL 5955700, at *5 (S.D. Fla. July 31, 2023) (Reid, Mag. J.) ("These facts place the crewmembers in the immediate vicinity of the transitory liquid substance. Drawing all reasonable inferences in [the plaintiff]'s favor, it is reasonable to infer that these crewmembers knew or should have known about the substance and either removed the hazard or warned [the plaintiff] of it.").[5]

MSC also wonders how its cruise employee would have noticed the wet floor when Iacoli herself did not. *See* MTD at 10 ("If Plaintiff who physically walked on the subject surface coated with an alleged 'risk creating condition,' did not see the alleged 'risk creating condition' as she approached the 'risk creating condition' and subsequently stepped on the 'risk creating condition,' then how was an alleged MSC crewmember stationed 10-15 feet away from the 'risk creating condition,' supposed to have seen the alleged 'risk creating condition?'"). That's certainly a fact question MSC should be prepared to raise for the jury at trial. For now, though, Iacoli has plausibly alleged that she "was not trained to look closely at this surface for hidden liquid on it *like MSC's crewmembers are or should have been due to their knowledge that the subject area was very slippery as evidenced by the warning signs they placed in the subject area*[.]" FAC ¶ 16(a) (emphasis added); *see also id.* ¶ 24 (same). We say that this allegation is plausible not just because it makes sense but because, if it weren't, then maritime slip-and-fall plaintiffs could *never* establish constructive notice based on the nearby presence of a crewmember. After all, by MSC's logic, in every case where a crewmember was close enough to the puddle to have seen it, the plaintiff

---

[5] The *Hostert* and *Aponte* decisions came at summary judgment, where the burden on the plaintiff—to adduce *evidence* that creates a genuine issue of material fact on the issue of constructive notice—was *heavier* than it is here.

should have noticed the puddle, too. And, if the plaintiff didn't notice the puddle before slipping on it—so the argument goes—then the crewmember couldn't plausibly have seen it either. But (as we've highlighted) that's just not the law. *See, e.g.*, *Plott*, 786 F. App'x at 203 (finding—in a negligence suit where the plaintiff slipped on a hazard she hadn't seen—that the plaintiff had established constructive notice by showing that there were crewmembers in the immediate vicinity of the hazard).

Finally, we don't much care that Iacoli doesn't know the name (or the specific job description) of the MSC crewmember. *See* MTD at 10 ("In conveniently alleging the presence of an MSC crew member, Plaintiff fails to identify the rank, position, department, and or name of the alleged MSC crew member."). All that matters (at this stage of the case) is that she's identified the individual *as a crewmember* generally. *See Hostert*, 2024 WL 68292, at *11 n.5 (noting that there is no requirement that "a slip-and-fall plaintiff . . . identify the offending crewmember by name, rank, and serial number—a requirement that would make little sense in an industry that regularly staffs its ships with *temporary* employees from around the world who, after short stints on ships, often return home"); *Mclean v. Carnival Corp.*, 2023 WL 372061, at *3 (S.D. Fla. Jan. 24, 2023) (Scola, J.) ("While the Plaintiff does not specifically name the crewmembers, there is no requirement in the law that she do so, and it would seem fundamentally unfair to require the Plaintiff to remember the names of each of the crewmembers involved in the incident simply to file a complaint."); *Coletti v. Carnival Corp.*, 2024 WL 580355, at *7 (S.D. Fla. Feb. 13, 2024) (Bloom, J.) ("The Court is unaware of any legal authority that requires the plaintiff to allege the names of the employees who were negligent at this stage of the proceedings." (cleaned up)).

In short, we **DENY** MSC's MTD on the issue of notice as to Counts I–IV.[6]

---

[6] Because Iacoli has plausibly alleged that MSC was on constructive notice (by virtue of the warning cone and the crewmember), we needn't address her separate argument that MSC was on constructive notice as a result of online comments MSC should've seen on the website cruisecritic.com. *See* FAC ¶ 16(c) (describing online comments about MSC's dangerous floors); *see also* MTD at 11–12 (challenging the relevance of these online comments).

9

## II.     Count IV: Failure to Warn of Dangerous Condition

In Count IV, Iacoli asserts a claim of negligent failure to warn. *See* FAC ¶¶ 62–76. To prevail on a negligent-failure-to-warn claim, a plaintiff must show that "(1) [the defendant] had a duty to protect her from a particular injury"—specifically, by warning the plaintiff of a particular hazard; "(2) [the defendant] breached that duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020). On the duty element, "[a]n operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Fawcett v. Carnival Corp.*, 682 F. Supp. 3d 1106, 1111–12 (S.D. Fla. July 10, 2023) (Altonaga, C.J.) (quoting *Guevara*, 920 F.3d at 720 n.5)); *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. Nov. 20, 2006) (Moreno, J.) (noting that a cruise operator's duty to warn "extends only to those dangers which are not apparent and obvious to the passenger").

Iacoli has plausibly alleged that the hazard—*i.e.*, the wet spot on the floor—"was neither open nor obvious. . . as IACOLI was unable to see the water on the surface due to the shiny marble polish obscuring it." FAC ¶ 24. She's also sufficiently asserted that MSC had actual—or at least constructive—notice of the wet spot. *See ante*, at 4–10. And she's properly claimed that MSC "breached the duty of reasonable care owed to IACOLI and was negligent by failing to warn IACOLI that the subject surface was unreasonably slippery." FAC ¶ 66.

MSC disagrees. Iacoli (it says) "can't have it both ways" by simultaneously alleging that (1) MSC "was on notice of the alleged risk-creating condition because 'there was a wet floor caution cone on the subject surface and a floor-slippery-when-wet plaque in the subject area,'" and (2) MSC "failed to warn of the alleged risk creating condition." MTD at 1. Again, however, MSC just ignores all the available jurisprudence. For one thing, it's well-settled that "[p]leading in the alternative is permissible." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d 1141, 1164 (S.D. Fla. Dec. 31, 2020) (Rosenberg, J.); *see also* FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a

10

claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. Jan. 23, 1997) (Moreno, J.) ("[U]nder Federal Rule of Civil Procedure 8(e)(2) [sic] a party may set forth inconsistent or alternative claims in a single complaint."). So, there's nothing wrong with Iacoli "having it both ways" in her complaint. She can allege that the Defendant failed to warn her in one count and then, in the next, claim that the warning cones constitute plausible evidence of MSC's knowledge of the dangerous condition. For another, there's nothing inherently inconsistent about pleading, in one count, that the warning cone evidences MSC's knowledge and, in a separate count, alleging that MSC's warning cone failed to warn properly. In fact, courts in our District routinely allow failure-to-warn claims in slip-and-fall cases to proceed—even when the plaintiff alleges that warning cones were present.

Take, for instance, *Nathans v. Carnival Corp.*, 2018 WL 6308694 (S.D. Fla. Aug. 31, 2018) (Altonaga, J.). The passenger there sued a cruise operator for negligent failure to warn after she slipped and fell on "the floor of the Lido deck near the Apollo pool." *Id.* at *1. The accompanying CCTV footage revealed that there were "two 'Caution Wet Floor' signs on the Lido deck," but the passenger "state[d] the signs did not warn those on the deck that there was a hazard at the area of the deck where [she] fell." *Ibid.* The district court denied the cruise operator's contention at summary judgment that it had "satisfied its duty to warn Plaintiff by placing two 'Caution Wet Floor' signs in the immediate area where Plaintiff slipped," because there was "a clear dispute between the parties as to whether warning signs were placed in the area where Plaintiff fell." *Id.* at *5 (cleaned up). "Whether adequate efforts were made to communicate a warning to the ultimate user," the court rightly explained, "and whether the warning if communicated was adequate are uniformly held questions for the jury." *Ibid.* (quoting *Stapleton v. Kawasaki Heavy Indus., Ltd.*, 608 F.2d 571, 573 (5th Cir. 1979)).[7] The court therefore

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

11

concluded that "the question of whether the warning cones were sufficiently close to the area where Plaintiff fell to reasonably warn of the danger of the slippery deck is a factual matter for the jury." *Ibid.*

Likewise, in *Radke v. NCL (Bahamas) Ltd.*, 536 F. Supp. 3d 1313, 1323 (S.D. Fla. May 3, 2021) (Bloom, J.), a passenger brought a negligent-failure-to-warn claim against a cruise operator after she slipped and fell on an allegedly wet surface. *Id.* at 1316. The cruise operator moved for summary judgment on the ground that it had "satisfied [its] duty [to warn] by placing caution signs in the area of Plaintiff's fall." *Id.* at 1323. Again, the district court rejected this argument, reasoning that there was "a clear dispute between the parties as to whether caution signs were placed in the area of Plaintiff's fall, and whether the caution signs were close enough in proximity to the dangerous condition to serve as a *sufficient warning.*" *Ibid.* (emphasis added). As the court noted, "it is the factfinder's role to 'determine whether such warnings are sufficient under the circumstances.'" *Ibid.* (quoting *Frasca v. NCL (Bahamas) Ltd.*, 654 F. App'x 949, 954 n.5 (11th Cir. 2016)).

As in *Nathans* and *Radke*, Iacoli contests the *efficacy* of the warning cone and the placard MSC placed in the area of the fall. *See* FAC ¶ 24 ("IACOLI was *unable to see* the nearby caution cone because she was distracted by the Christmas Tree[.]" (emphasis added)). And that raises a factual question we must leave for the jury. We therefore **DENY** the motion to dismiss Count IV.[8]

### III. Count V: Negligent Design

In Count V, Iacoli alleges that "MSC owed a duty to its passengers, and in particular a duty to IACOLI, not to permit dangerous conditions to be in places where they could harm passengers, such as the subject unreasonably slippery surface . . . which was unreasonably slippery due to the subject surface not meeting the minimum .42 standard of co-efficient of friction or slip resistance, as well as

---

[8] As we've said, because we're already denying the MTD, we needn't address Iacoli's separate argument that "there were many caution cones out all throughout the ship such that she did not realize that this area was substantially more dangerous than all of the other areas on the ship with caution cones out." FAC ¶ 24. We do note, however, that we've found no cases supporting this bizarre theory and would caution Iacoli against advancing unsupported arguments at summary judgment or trial.

12

to design and install reasonable safeguards." FAC ¶ 78. "MSC," she continues, "approved of the subject vessel's design, including the design of the subject area and the vicinity," and "manufactured, designed, installed, and/or approved of the *Seascape*, including providing specifications to the shipbuilder in the original build process[.]" *Id.* ¶¶ 79–80. "However, MSC permitted the subject area to have a co-efficient of friction and slip resistance of under .42, which is unreasonably slippery under both cruise industry standards and standards external to the cruise industry, including, but not limited to, the American National Standards Institute (ANSI)[.]" *Id.* ¶ 86. Finally, she says, "MSC failed to correct and/or remedy the defective condition, despite the fact that MSC knew or should have known of the danger(s)." *Id.* ¶ 90.

In moving to dismiss this count, MSC relies on *Groves v. Royal Caribbean Cruises*, 463 F. App'x 837 (11th Cir. 2012). *See* MTD at 5 n.1 (arguing that, under *Groves*, the "Plaintiff is also required to establish MSC's notice for claims sounding in negligent design"). The plaintiff in *Groves* slipped and fell in a cruise-ship dining room and sued Royal Caribbean for negligent design of the "wait station," the granite-floored area where passengers waited to be seated. *Groves*, 463 F. App'x at 837. At *summary judgment*, "[t]he district court found that [the plaintiff] presented *no evidence* that [Royal Caribbean] actually created, participated in, or approved the alleged negligent design of these areas near the dining room where [the plaintiff] was injured." *Ibid.* The Eleventh Circuit affirmed, noting that, "[u]nder the law in this circuit, [Royal Caribbean] can be liable only for negligent design of the dining area *if* it had actual or constructive notice of such hazardous condition. . . . The district court found that it did not. We agree." *Ibid.* (emphasis added).

For two reasons, *Groves* is very different from our case. *One*, *Groves* was decided at summary judgment. So, its requirement that the plaintiff produce *evidence* in support of his claim is simply inapposite here. *Two*, while MSC is right that Iacoli must "establish MSC's notice for claims sounding in negligent design," MTD at 5 n.1, our review of the FAC reveals that she's done precisely that:

13

"MSC," Iacoli alleges, "through its agents and/or employees who were acting in the course and scope of their employment and/or agency with MSC, designed, installed, and/or approved of the subject area and the vicinity involved in IACOLI's incident, which was also in violation of the applicable industry standards." FAC ¶ 81; *see also id.* ¶ 16(c) ("MSC should have known of the[ ] [ANSI] standards/recommendations/other guidelines because whether [these] are legally required for MSC to comply with or not, a fact finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done."). In other words, Iacoli claims that MSC was *intimately involved* in the design and construction of its own cruise ships—including the design and construction of the allegedly hazardous floors. If that's true— and, at this pleading stage of the case, we must assume it is—then Iacoli would have established that MSC was on notice of the dangerous condition of its floors.

It's worth noting, too, that Iacoli's allegations on this issue are almost indistinguishable from the claims the plaintiff advanced in an earlier case before us, *Spotts v. Carnival Corp.*, where the complaint included the following assertion:

> CARNIVAL holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved. CARNIVAL approved of the design, construction, and selection of materials of the subject area . . . . CARNIVAL knew or should have known that the subject area including the flooring it chose and installed on the Lido Deck on the *Carnival Pride* was unreasonably dangerous and slippery when wet . . . . CARNIVAL's negligent design, construction, and selection of the flooring for the Lido deck on board the *Carnival Pride* proximately caused SPOTTS' injuries.

2024 WL 111921, at *6–7 (S.D. Fla. Jan. 10, 2024) (Altman, J.). "[B]ased on th[ose] allegations," we found that the plaintiff "ha[d] done just enough to state a claim for negligent design." *Id.* at *7.

Our case is also very similar to the allegations Judge Scola confronted in *Donaldson v. Carnival Corp.*, where "the complaint state[d] that the 'Defendant participated in the design process'; 'approved of the Carnival *Dream*, including providing specifications to the shipbuilder'; and 'Defendant maintains the contractual right to participate, review, modify, and/or reject the design plans.'" 2020 WL

14

6801883, at *4 (S.D. Fla. Nov. 19, 2020) (Scola, J.). As here, Judge Scola found these allegations sufficient to get the plaintiff to discovery on her negligent-design claim. *See ibid.* ("Taking these allegations as true, as the Court must at this stage, the Court finds that these allegations support a finding that Carnival may have 'actually designed' the staircase where Plaintiff was injured and accordingly, Carnival may have been on actual or constructive notice of the danger[.]").

In our case, as we've said, Iacoli alleges that "MSC provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity. MSC maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Seascape*, during the new build process." FAC ¶¶ 82–83. As in *Spotts* and *Donaldson*, then, we find that "these allegations support a finding that [MSC] may have actually designed the [floor] where Plaintiff was injured and accordingly, [MSC] may have been on actual or constructive notice of the danger[.]" *Donaldson*, 2020 WL 6801883, at *4. We therefore **DENY** the motion to dismiss Count V.[9]

\* \* \*

Accordingly, after careful review, we **ORDER and ADJUDGE** that MSC's Motion to Dismiss [ECF No. 16] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on July 22, 2024.

---

[9] Because we're denying the MTD, we needn't address Iacoli's separate appeal to the ANSI standards, *see* FAC ¶ 16(c), 86; *see also* Response at 15–18, or MSC's response to that argument, *see* MTD at 13; Reply at 8–9.

                                                        **ROY K. ALTMAN**
                                                        **UNITED STATES DISTRICT JUDGE**

cc:      counsel of record